589 P.2d 456

The STATE of Arizona, Appellee,

v.

Lonnie Gene WILLIAMS, Appellant.

No. 2 CA–CR 1357–6.

Court of Appeals of Arizona,
Division 2.

Nov. 15, 1978.

Rehearing Denied Dec. 27, 1978.

Review Denied Jan. 16, 1979.

John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Donald H. Bayles, Jr., Asst. Public Defender, Tucson, for appellant.

OPINION

HOWARD, Judge.

Appellant was convicted by a jury of second degree burglary, molestation of a child and possession of marijuana. He argues on appeal that the trial court erred in not granting his motion for a directed verdict of acquittal under Rule 20, Arizona Rules of Criminal Procedure, and in not granting a mistrial.

The burglary and child molesting incidents occurred on February 16, 1977. The victim, a five year old, was playing in a school playground across the street from her home. No one was at her home at the time. She noticed a man in her front yard next to the house and crossed the street to talk to him. He asked her for a drink, and

the two went inside. The man did not drink the glass of water the little girl fixed for him, but instead wanted to play a game. The game he proposed was the act of molestation for which appellant has been convicted. The victim became frightened and asked the man to stop, which he did. The two went into her bedroom and one of them turned on a television set in there. The girl then went back across the street to the playground, leaving the man in the house. When her mother came home around 6:30 p. m. she discovered the television set was missing.

The next day an investigator showed the victim a lineup of ten photographs. She selected appellant's photograph as the man who had been in the house with her the day before. When appellant was arrested that afternoon he had a baggie of marijuana in his pocket.

In addition to the victim's identification, the state presented the following evidence linking appellant to the burglary and child molesting. A friend of appellant who lives on the same block as the victim's family testified that on February 16 appellant came by his house around 5:30 p. m., then left for about fifteen minutes, walking in the direction of the victim's house, and returned sometime around 6:00 p. m. with a television set which was later identified as the one that had been stolen. In the description she gave the police officer, the victim mentioned that the man had underpants "not like her father wears", i. e., not briefs. The officer testified:

"She stated that it was—she put it black with white flowers. However, she had stated that there were flowers and maybe the flowers were black or the flowers were black with white flowers. She was somewhat confused, and on the verge of hysteria at the time."

When appellant was arrested, he was wearing light blue under shorts with a design on them.

Appellant testified that during the fifteen minutes he was absent from his friend's house he met another friend in the alley carrying the television set. He agreed

with this friend, known to him only as Bruce, to try to sell the television set and split the money with him. According to him, Bruce and he were the same general size and color.

Rule 20, Arizona Rules of Criminal Procedure, says that the trial court shall grant a defendant's motion for a directed verdict when "there is no substantial evidence to warrant a conviction." Therefore, in reviewing a refusal to direct an acquittal, the evidence is viewed in the light most favorable for conviction. Appellant cites cases where the appellate court has set aside a conviction resting solely on a shaky identification of the defendant, e. g., *United States v. Keller,* 512 F.2d 182 (3rd Cir. 1975); *United States v. Musquiz,* 445 F.2d 963 (5th Cir. 1971); *People v. Gardner,* 35 Ill.2d 564, 221 N.E.2d 232 (1966).

On February 16, the little girl gave a police officer a scanty description of the man who had been in the house with her. She said he was a black man about the same height as the police officer, gave a vague description of his clothes, and described his underwear.

The next day an investigator, Detective Lowe, showed her a lineup of ten photographs. He did not suggest that one of them might be of the man who had molested her. He only asked her if she wanted to look at some pictures and handed them to her. At the trial he described her identification of appellant's photograph:

"A. She made a comment about the first photograph. I'm not sure exactly what it was, but she went down to about the fifth one and said that that man was funny, and the sixth one she said that that man looked mean, or something to that effect.

Q. Did she make any comment about any other photograph?

A. The seventh one she said, 'That's the man'.

Q. Did you ask her what she meant by that?

A. No, I didn't. She said, 'That's the man'. There was a hesitation and then, 'That's the man that was here.' "

In his police report, Lowe described the identification:

"When she came to the photograph of Lonnie Gene Williams, she pointed with her right hand and said, 'That's the man, I think,' hesitating between 'that's the man' and 'I think.' She looked at it again and said, 'That's the man who was here.'"

Three months after the incident a defense investigator showed the girl a lineup of color photographs including one of the appellant. She was unable to pick out any photograph as being of the man who had molested her.

Six months after the incident the prosecuting attorney again showed her the lineup she had seen on February 17. She was unable to identify which was of the man. Her mother then suggested that the girl hand her the photographs of the men whom she was sure she did not recognize. She spent approximately half an hour going through these pictures, handing her mother the photograph of appellant last of all, saying "I'm not sure." The same day she was shown the underwear appellant had been wearing when he was arrested. She said she was not sure if she had seen it before.

At the trial, seven months after the incident, the little girl was unable to identify appellant as the man who had molested her, even though he was pointed out to her. She was unable to pick out his photograph from the same lineup and she said that the underwear was not the underwear the man was wearing when she was molested.

■ The victim's initial identification of appellant was not uncertain, as were the identifications in *United States v. Keller,* supra, and *United States v. Musquiz,* supra. She did not say the photograph was of a man who looked like the man who molested her; she said it was the man. Nor is the identification countered by exculpatory evidence, as in *People v. Gardner,* supra. Her identification is not necessarily weakened by her later failures to identify appellant. It is understandable that a five-year-old's memory is short. Before the little girl testified the trial judge questioned her and

determined that she was a competent witness. The jury saw her and listened to her, and were better able then we to judge the value of her identification. Her identification was bolstered by other evidence, including the fact that appellant was in possession of the television set taken from her home. The trial court did not err in refusing to direct a verdict of acquittal.

Although the transcript does not clearly reflect it, there were indications that the victim was crying almost the whole time she was testifying. Appellee's brief states that she "cried uncontrollably and could hardly answer questions" and she "could be heard sobbing pathetically outside the courtroom in the hallway during Officer Lowe's testimony."

■ Appellant moved for a mistrial after the little girl's testimony had to be interrupted to let her calm down. The court denied the motion. Appellant now argues that he was denied a fair trial by an impartial jury. We do not believe that the trial judge abused his discretion in refusing to grant a mistrial. As the judge pointed out, it is unusual in cases of this kind for the victim not to cry while testifying. The judge based his decision in part on the fact that the little girl would probably cry when testifying at a second trial.

The trial judge gave the instruction requested by appellant that the jury "must not be influenced by sympathy or prejudice. . . ." We believe that the trial judge who witnessed the victim's conduct and could measure its possible effect on the jury did not abuse his discretion in failing to order a mistrial. *State v. Wayman,* 104 Ariz. 125, 449 P.2d 296 (1969).

■ Appellant now suggests that at a second trial the victim could be spared the ordeal of testifying, and the jury could be spared the possibly prejudicial effect of her emotionalism, by admitting the transcript from the first trial into evidence or videotaping questioning in the judge's chambers, as is now allowed by A.R.S. Sec. 12–2312, Laws 1978, ch. 89. Neither suggestion was made to the trial judge when he was decid-

ing whether to grant a mistrial. The law permitting videotaping had not yet been passed. This court's role in reviewing the grant or denial of a mistrial is to correct any abuse of the trial judge's discretion. We do not weigh alternatives which were not offered for his consideration.

Appellant also argues that a mistrial was warranted after Det. Lowe, who works in the Sex Crime Detail of the Tucson Police Department, indicated that he had previously known appellant. The objectionable testimony was:

"Q. Did you have any discussion with Mr. Williams at that time?

A. I talked to him briefly about old times and what he was doing."

Appellant contends that the natural inference for the jury to have drawn was that he had a criminal record.

In *State v. Finn,* 111 Ariz. 271, 528 P.2d 615 (1974), the court held that the following testimony did not necessarily indicate the defendant had previously had trouble with the police, and so did not require a reversal:

" 'Q. Did you have occasion to talk to Mr. Finn about where he had been?

A. Yes.

Of course, I've known David from before, and I had spoken to him—' " 111 Ariz. at 278, 528 P.2d at 618.

In our opinion, the reference to "old times" is more benign than the testimony in *Finn.* We do not agree with appellant's argument that the perceptible social, educational and economic differences between him and Lowe precluded the jury from thinking they could have known each other in any way other than as police officer and criminal.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.